UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| BRANDY NICOLE CRUMP, | ) | |
| | ) | |
| Plaintiff, | ) | 18 C 2302 |
| | ) | |
| vs. | ) | Judge Gary Feinerman |
| | ) | |
| CARRINGTON MORTGAGE SERVICES, LLC, | ) | |
| EQUIFAX INFORMATION SERVICES, LLC, | ) | |
| TRANSUNION, LLC, and EXPERIAN INFORMATION | ) | |
| SOLUTIONS, LLC, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

Brandy Nicole Crump sued credit reporting agencies Equifax Information Services, LLC, TransUnion, LLC, and Experian Information Solutions, LLC, and mortgage lender and servicer Carrington Mortgage Services, LLC, alleging that they violated the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq.*, by reporting that she owed tens of thousands of dollars on a loan that had been discharged in bankruptcy and by refusing to correct that information after she disputed it. Doc. 1. Crump has resolved her claims against all Defendants save Experian, which moves under Civil Rule 12(b)(6) to dismiss the claims against it. Doc. 31. The motion is granted in part and denied in part.

**Background**

In resolving a Rule 12(b)(6) motion, the court assumes the truth of the operative complaint's well-pleaded factual allegations, though not its legal conclusions. *See Zahn v. N. Am. Power & Gas, LLC*, 815 F.3d 1082, 1087 (7th Cir. 2016). The court must also consider "documents attached to the complaint, documents that are critical to the complaint and referred to in it, and information that is subject to proper judicial notice," along with additional facts set

1

forth in Crump's brief opposing dismissal, so long as those additional facts "are consistent with the pleadings." *Phillips v. Prudential Ins. Co. of Am.*, 714 F.3d 1017, 1019-20 (7th Cir. 2013). The facts are set forth as favorably to Crump as those materials allow. *See Pierce v. Zoetis, Inc.*, 818 F.3d 274, 277 (7th Cir. 2016). In setting forth the facts at the pleading stage, the court does not vouch for their "objective truth." *Goldberg v. United States*, 881 F.3d 529, 531 (7th Cir. 2018).

Crump filed for Chapter 13 bankruptcy on July 31, 2014. Doc. 1 at ¶ 9. In Schedule D of her bankruptcy petition, Crump listed Bank of America as a secured creditor holding an $83,588 claim on a mortgage loan and represented that the home securing the loan was worth $75,000. *Id*. at ¶ 10; Doc. 32-2 at 2. Crump later filed an Amended Chapter 13 Plan ("the Plan") providing that she would "surrender[]" the home to Bank of America "in full satisfaction of its secured claim." Doc. 1 at ¶ 12.

On November 14, 2016, the bankruptcy court granted Crump a discharge; although Crump does not specifically allege that the discharge was consistent with the Plan, the parties' briefs assume as much. *Id*. at ¶ 14. The bankruptcy court's discharge order stated in its entirety: "IT IS ORDERED: A discharge under 11 U.S.C. § 1329(a) is granted to: Brandy Nicole Crump aka Brandy Crump." Doc. 32-3 at 2. An "Explanation of Bankruptcy Discharge in a Chapter 13 Case" printed beneath the order, which described in laypersons' terms the general effect of the discharge, ended with this disclaimer: "This information is only a general summary of a chapter 13 discharge; some exceptions exist. Because the law is complicated, you should consult an attorney to determine the exact effect of the discharge in this case." *Id*. at 3. Crump believes that her mortgage loan was fully discharged and therefore that the balance, past due amount, and

monthly payment amount on the loan were reduced to "zero" as of the date of the discharge order. Doc. 1 at ¶ 32.

In 2017, Carrington acquired and began reporting on Crump's loan. *Id*. at ¶¶ 23-24. That December, Crump discovered that Experian, a consumer reporting agency ("CRA"), was reporting information about the loan that she believed to be inaccurate and incomplete. *Id*. at ¶ 25. Crump sent Experian a dispute letter, expressing her view that the mortgage debt was discharged and attaching "all relevant and supporting documents." *Id*. at ¶¶ 26-28.

Experian responded on January 16, 2018, stating that it had reinvestigated her dispute and either had changed the report based on the information she provided or had submitted that information to Carrington with instructions to review, respond to, and, if warranted, update its systems to reflect that information. *Id*. at ¶ 64. After concluding its reinvestigation, Experian reported a $141,426 balance, a $1,008 monthly payment, and $63,837 past due on the loan. *Id*. at ¶ 65. As a result, Crump was denied credit, incurred costs in attempting to correct the information, and suffered mental and emotional distress. *Id*. at ¶¶ 73-76.

## Discussion

Crump filed this suit on March 29, 2018. Doc. 1. She alleges that Experian violated the FCRA by not establishing or following reasonable procedures to assure maximum possible accuracy in its reports, 15 U.S.C. § 1681e(b), by not properly reinvestigating her dispute, *id*. § 1681i, and/or by failing to note in her credit report that she disputed the mortgage loan debt, *id*. § 1681c(f). Doc. 1 at ¶¶ 144-167.

### I.      Section 1681c(f) Claim

Section 1681c(f) provides: "If a [CRA] is notified pursuant to [15 U.S.C. §] 1681s-2(a)(3) … that information regarding a consumer [which] was furnished to the [CRA] is disputed

by the consumer, the [CRA] shall indicate that fact in each consumer report that includes the disputed information." 15 U.S.C. § 1681c(f). Section 1681s-2(a)(3), in turn, provides that if a consumer contacts a creditor to dispute information that the creditor previously furnished to a CRA, the creditor must notify CRAs of the dispute when furnishing that information in the future. *Id*. § 1681s-2(a)(3). Experian contends that Crump's § 1681c(f) claim should be dismissed because she does not allege that she contacted any *creditor* about the disputed information or that the creditor conveyed that dispute to Experian. Doc. 32 at 11-12. Crump does not respond to this argument, thus forfeiting the claim. *See Goodpaster v. City of Indianapolis*, 736 F.3d 1060, 1075 (7th Cir. 2013) ("Because [the plaintiffs] did not provide the district court with any basis to decide their claims, and did not respond to the [defendant's] arguments, these claims are waived."); *Alioto v. Town of Lisbon*, 651 F.3d 715, 721 (7th Cir. 2011) ("We apply [the forfeiture] rule … where a litigant effectively abandons the litigation by not responding to alleged deficiencies in a motion to dismiss. … Our system of justice is adversarial, and our judges are busy people. If they are given plausible reasons for dismissing a complaint, they are not going to do the plaintiff's research and try to discover whether there might be something to say against the defendants' reasoning.") (internal quotation marks omitted). Because Crump has not yet amended her complaint, the dismissal is without prejudice. *See Pension Trust Fund for Operating Eng'rs v. Kohl's Corp.*, 895 F.3d 933, 941 (7th Cir. 2018) ("We repeatedly have said that a plaintiff whose original complaint has been dismissed under Rule 12(b)(6) should be given at least one opportunity to try to amend her complaint before the entire action is dismissed.").

## II. Sections 1681e(b) and 1681i(a) Claims

Section 1681e(b) states: "Whenever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." 15 U.S.C. § 1681e(b). Section 1681i(a) states in pertinent part:

> [I]f the completeness or accuracy of any item of information contained in a consumer's file at a consumer reporting agency is disputed by the consumer and the consumer notifies the agency directly, or indirectly through a reseller, of such dispute, the agency shall, free of charge, conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate and record the current status of the disputed information, or delete the item from the file in accordance with paragraph (5), before the end of the 30–day period beginning on the date on which the agency receives the notice of the dispute from the consumer or reseller.

*Id.* § 1681i(a)(1)(A). In seeking dismissal of Crump's § 1681e(b) and § 1681i(a) claims, Experian argues that the complaint does not allege that it reported inaccurate information or that it acted unreasonably in connection with her credit report.

### A. Inaccurate Information

To state a claim under § 1681e(b) or § 1681i(a), Crump must allege that her consumer report included inaccurate information. *See Childress v. Experian Info. Sols., Inc.*, 790 F.3d 745, 747 (7th Cir. 2015) (affirming summary judgment on a § 1681e(b) claim, in part, because there was "no inaccuracy in the statement in the plaintiff's credit report"); *Johnson v. Trans Union, LLC*, 524 F. App'x 268, 270 (7th Cir. 2013) ("Johnson must prove that something in his credit report was inaccurate, or at least misleading, to show that the defendants' procedures were unreasonable under 15 U.S.C. § 1681e(b), or that the defendants failed to reasonably reinvestigate under 15 U.S.C. § 1681i.") (citations omitted); *Wantz v. Experian Info. Sols.*, 386 F.3d 829, 834 (7th Cir. 2004) ("In the absence of evidence that Experian disclosed incorrect information about the Virginia judgment to a third party, Wantz cannot even show that it violated

5

the Act's reinvestigation requirement … ."), *abrogated on other grounds by Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47 (2007); *Sarver v. Experian Info. Sols.*, 390 F.3d 969, 971 (7th Cir. 2004) ("[T]o state a claim under [§ 1681e(b)], a consumer must sufficiently allege 'that a credit reporting agency prepared a report containing inaccurate information.'") (quoting *Henson v. CSC Credit Servs.*, 29 F.3d 280, 284 (7th Cir. 1994)) (internal quotation marks omitted). Experian makes two arguments as to why Crump has not plausibly alleged an inaccuracy in her credit report. Doc. 32 at 7-11.

Experian's first argument starts from the premise (which Crump does not challenge) that the home securing her mortgage loan was her "principal residence" within the meaning of § 1322(b)(2) of the Bankruptcy Code. Section 1322(b)(2) provides that a Chapter 13 plan may not "modify" a debt secured by a debtor's principal residence. 11 U.S.C. § 1322(b)(2) ("[T]he plan may … modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence … ."); *see Rake v. Wade*, 508 U.S. 464, 473 n.9 (1993) ("[Section] 1322(b)(2) generally prohibits the modification of the rights of home mortgage holders."); *Nobelman v. Am. Sav. Bank*, 508 U.S. 324, 327 (1993) ("[T]he 'other than' exception in § 1322(b)(2) proscribes modification of the rights of a homestead mortgagee."). Some courts hold that § 1322(b)(2)—when read in conjunction with 11 U.S.C. § 1328(a), which states that a Chapter 13 discharge order discharges only those debts "provided for by the [Chapter 13] plan"—effectively prohibits discharge of a debt secured by a debtor's principal residence. *See, e.g.*, *In re Dukes*, 2016 WL 5390948, at *5 (M.D. Fla. Sept. 27, 2016), *aff'd*, __ F.3d __, 2018 WL 6367176 (11th Cir. Dec. 6, 2018); *In re Park*, 532 B.R. 392, 398 (Bankr. M.D. Fla. 2015). The more persuasive of those decisions reason that if a Chapter 13 plan cannot "modify" a debt secured by the debtor's principal residence, then the

6

debt cannot be "provided for" in the Chapter 13 plan, which means that the debt cannot be discharged. *See*, *e.g.*, *Dukes*, 2016 WL 5390948, at *5 ("[A] Chapter 13 plan that does not modify the rights of a secured creditor under the plan leaves unaffected the rights of that creditor under § 1322(b)(2). If the rights of the holder of the claim are left unaffected, the claim is not discharged.") (citations omitted); *Park*, 532 B.R. at 398 (same). According to Experian, because Crump could not lawfully have received what her complaint alleges that she received—a full discharge of her mortgage loan—the complaint cannot plausibly allege that Experian was inaccurate in reporting that there was a $141,426 balance, a $1,008 monthly payment, and $63,837 past due on the loan. Doc. 32 at 7-8.

Experian's argument would have force in an appeal challenging the bankruptcy court's confirmation of a Chapter 13 plan that modifies a mortgage loan on a principal residence. As a defense to an FCRA claim, however, it misses the mark, for it ignores a fundamental feature of our legal system: A court order is binding until vacated or reversed, whether or not the order was correctly decided. *See Kathrein v. City of Evanston*, 752 F.3d 680, 688 (7th Cir. 2014) ("It is important both for litigants and the judicial system that claims already decided remain that way, barring an appropriate motion for reconsideration or to set aside the judgment."); *Shemaitis v. Reid*, 193 F.2d 119, 120-21 (7th Cir. 1951) ("[W]hether [the judge] may have been mistaken in the facts or may have misconceived the law, did not affect the validity of the judgment, and the judgment, whether right or wrong, was valid and binding until set aside by proper proceedings."); *United States v. Rothstein*, 187 F. 268, 269 (7th Cir. 1911) ("Having jurisdiction of the parties and of the subject-matter, the court had lawful power to render a judgment which would be equally binding whether questions of fact or of law were rightly or wrongly decided."); *McWilliams v. Blackard*, 96 F.2d 43, 45 (8th Cir. 1938) ("Whenever the right and the duty of a

7

court to exercise its jurisdiction depends upon the decision of a question it has power to hear and determine, its judgment, right or wrong, is binding upon the parties and those in privity with them. The power to decide includes the power to decide erroneously.") (internal citations omitted).

Thus, to report "accurately" on Crump's mortgage loan, Experian's credit report had to reflect what the discharge order *actually* accomplished based on what the Plan *actually* provided for—not what the discharge order *should have* accomplished based on what the Plan *should have* provided for. It follows that if Crump has plausibly alleged that Experian's report was inconsistent with the discharge order, then Crump has sufficiently alleged an inaccuracy. Crump has done just that. She plausibly alleges that the Plan provided for surrender of her home in full satisfaction of what was then Bank of America's secured claim. Doc. 1 at ¶ 12. Because § 1328(a) states that all debts provided for in a confirmed plan and not excepted in § 1328(a)(1)-(4) are discharged, and because mortgage loans secured by a debtor's primary residence are not among the exceptions, Crump plausibly alleges that the secured claim had been discharged by the time Experian issued its report.

Experian's second argument is that even if the *secured* claim had been discharged, the remaining, unsecured portion of Crump's mortgage debt had not been, rendering implausible the complaint's allegation that her liability on the debt was "zero." Doc. 1 at ¶ 32; Doc. 32 at 8. Experian's argument seems to be that because Crump has not plausibly alleged the *correct* amount of her remaining mortgage debt as of January 2018, the date of Experian's report, it cannot be inferred from the complaint that the amount Experian reported was *incorrect*. Experian's argument fails at the pleading stage.

8

Section 506(a) of the Bankruptcy Code provides that a "claim of a creditor secured by a lien on property in which the [bankruptcy] estate has an interest" is "secured" only "to the extent of the value of such creditor's interest in the estate's interest in such property," leaving it "unsecured … to the extent that the value of such creditor's interest … is less than the amount of such allowed claim." 11 U.S.C. § 506(a). The effect of § 506(a) is to "divide[] loans into secured and unsecured portions; the unsecured portion is the amount by which the debt exceeds the current value of the collateral." *In re Wright*, 492 F.3d 829, 830 (7th Cir. 2007); *see also In re Ryan*, 725 F.3d 623, 624 (7th Cir. 2013) ("Section 506(a) of the Bankruptcy Code separates loans into secured and unsecured portions. … If the value [of the collateral] is less than the unpaid balance of the secured loan, the difference is considered an unsecured claim of the creditor."); *cf.* U.S. Bankr. Ct., Instructions: Bankruptcy Forms for Individuals 18 (2015), http://www.uscourts.gov/sites/default/files/instructions_individuals_0.pdf ("To determine the amount of a secured claim [for purposes of Schedule D], compare the amount of the claim to the value of your portion of the property that supports the claim. … [I]f that value is less than the amount of the claim, the difference is an *unsecured portion*. For example, if the outstanding balance of a car loan is $10,000 and the car is worth $8,000, the car loan has a $2,000 unsecured portion."). Schedule D of Crump's bankruptcy petition values Bank of America's claim at $83,588 and values the surrendered house at $75,000, leaving an unsecured claim of $8,588. Doc. 32-2 at 2. According to Experian, because the Plan did not "provide for" this unsecured claim, 11 U.S.C. § 1328(a), that portion of Crump's debt was not discharged, rendering implausible the complaint's allegation that her debt was fully discharged. Doc. 32 at 8.

Crump does not contest Experian's interpretation of Schedule D or the Plan, thereby forfeiting any argument for a different interpretation. *See Firestone Fin. Corp. v. Meyer*, 796

9

F.3d 822, 825 (7th Cir. 2015) ("[A] party generally forfeits an argument or issue not raised in response to a motion to dismiss … ."); *G & S Holdings LLC v. Cont'l Cas. Co.*, 697 F.3d 534, 538 (7th Cir. 2012) ("We have repeatedly held that a party waives an argument by failing to make it before the district court."). The court therefore accepts Experian's submission that the Plan, and therefore the discharge order, did not reach the $8,588 unsecured portion of Bank of America's claim.

Crump nevertheless plausibly alleges the inaccurate information component of her §§ 1681e(b) and 1681i(a) claims because, even though a small portion of her mortgage debt survived her bankruptcy, it still reasonably can be inferred that Experian inaccurately reported her liability on the debt. Crump alleges that, in January 2018, Experian reported a $141,426 balance and a $63,837 past due amount on her mortgage loan, Doc. 1 at ¶ 65—amounts many times greater than the $8,588 unsecured claim left untouched by the discharge order, Doc. 32-2 at 2. Drawing reasonable inferences in Crump's favor, it is plausible that the amounts reported by Experian included portions of Crump's debt that had been discharged. Crump has therefore plausibly alleged an inaccuracy for purposes of her §§ 1681e(b) and 1681i(a) claims.

### B. Reasonable Procedures and Reasonable Reinvestigation

Experian next argues that Crump has insufficiently alleged that it acted unreasonably in connection with her credit report. "[T]he FCRA is not a strict liability statute." *Sarver*, 390 F.3d at 971. Rather, CRAs are liable under §§ 1681e(b) and 1681i(a)(1) for inaccurate reporting only if they fail to act reasonably. *See Shaw v. Experian Info. Sols., Inc.*, 891 F.3d 749, 755 (9th Cir. 2018) ("Liability under this reasonable procedures provision is predicated on the reasonableness of the [CRA's] procedures in obtaining credit information.") (internal quotation marks omitted). To state a § 1681e(b) claim, a plaintiff must allege that the CRA did not "follow reasonable

procedures to assure maximum possible accuracy of the information" in her consumer report. 15 U.S.C. § 1681e(b). To state a § 1681i(a)(1) claim, a plaintiff must allege that the CRA did not "conduct a reasonable reinvestigation" into the information that she disputed. *Id*. § 1681i(a)(1). "The reasonableness of a CRA's procedures is normally a question for trial unless the reasonableness or unreasonableness of the procedures is beyond question." *Sarver*, 390 F.3d at 971 (brackets and internal quotation marks omitted). The plaintiff bears the burden to establish that the CRA could have prevented or corrected an error by acting reasonably. *See Childress*, 790 F.3d at 747.

The complaint alleges that Experian violated § 1681e(b) *prior to* receiving Crump's dispute letter by not employing reasonable procedures to prevent the inaccurate report of her mortgage debt. Doc. 1 at ¶ 153. The complaint also alleges that Experian violated §§ 1681e(b) and 1681i(a)(1) *after* receiving Crump's dispute letter by continuing to report the inaccurate information without reasonably reinvestigating her dispute. *Id*. at ¶¶ 153-154. Experian contends that the complaint's allegations do not support an inference that it failed to take reasonable steps, either before or after receiving Crump's letter, because preventing or correcting the errors she identified would have unreasonably required it to gather and interpret bankruptcy court orders and adjudicate disputes concerning their application. Doc. 32 at 9-11. Crump responds that Experian did not need to make any legal determinations to prevent or correct the errors in her consumer report. Doc. 48 at 7.

1. **Experian's Conduct Before Receiving Crump's Letter**

Experian has the better of the argument as to Crump's § 1681e(b) claim for the period before she sent her dispute letter. In *Sarver*, the Seventh Circuit held that § 1681e(b) did not prohibit the CRA from reporting a debt based solely on information obtained from the creditor

before receiving notice that the plaintiff disputed the debt. 390 F.3d at 973. In so holding, the Seventh Circuit explained that the CRA reasonably relied on the creditor's information given that there was no indication that the creditor frequently reported debts inaccurately, that the CRA's information gathering procedures were systematically unreliable, or that the CRA could verify the creditor's information through reasonable means. *Id*. at 972. In *Childress*, the plaintiff alleged that the CRA violated § 1681e(b) by reporting that her bankruptcy petition had been "dismissed" rather than "voluntarily withdrawn." 790 F.3d at 746-47. It appeared from the record, however, that the only feasible way to distinguish a "dismissed" petition from a "voluntarily withdrawn" petition, at least before the consumer complained, was to employ "a live human being, with at least a little legal training, to review every bankruptcy dismissal and classify it as either voluntary or involuntary." *Id*. at 747. The court held that requiring that procedure was not reasonable because it "would put an enormous burden" upon the CRA. *Ibid*.; *see also Wright v. Experian Info. Sols., Inc.*, 805 F.3d 1232, 1241 (10th Cir. 2015) ("[The plaintiff argues that the FCRA] require[es] CRAs to employ individuals trained in American tax law to examine every [notice of federal tax lien] filed in a county recorder's office. No court has required a CRA to go this far to meet the reasonable procedures requirement of § 1681e(b).").

Given these precedents, Crump has no viable § 1681e(b) claim for the period before Crump sent her dispute letter. Experian reported the allegedly inaccurate information regarding Crump's mortgage loan in reliance on information that Carrington provided. Doc. 1 at ¶¶ 23-25. And Crump does not allege, for example, that Carrington frequently reported debts inaccurately, that Experian's information gathering procedures were systematically unreliable, or that Experian could verify Carrington's information through reasonable means. *See Sarver*, 390 F.3d at 972. To the contrary, the Rule 12(b)(6) record reflects that Experian would have had to

review at least three court documents to discover the alleged inaccuracy: (1) the discharge order, which did not itemize the debts discharged and which warned laypersons to consult a lawyer about its scope, Doc. 32-3 at 2-3; (2) the Plan, which provided that Crump would surrender her home "to Bank of America, N.A., in full satisfaction of its secured claim," Doc. 1 at ¶ 12; and (3) Schedule D of her bankruptcy petition, which revealed that the "secured claim" referenced in the Plan arose out of the same debt that Carrington reported to Experian, Doc. 32-2 at 2. Verifying Carrington's information based on documents in the bankruptcy docket would have required Experian to employ "a live human being, with at least a little legal training, to review" the documents "and classify" the debt that Carrington reported as discharged or not. *Childress*, 790 F.3d at 747. And because there is no indication that Experian could have distinguished Crump's mortgage loan from any other debt that had been through bankruptcy, the only way to prevent errors like the one complained of here would have been to carry out this classification process for every such debt—a procedure that § 1681e(b) does not demand. *See ibid*.

Accordingly, prior to receiving Crump's dispute letter, Experian did not violate § 1681e(b) by relying on the information that Carrington reported instead of manually cross-checking that information against several documents on Crump's bankruptcy docket. *See ibid*.; *Sarver*, 390 F.3d at 972. Crump's § 1681e(b) claim is therefore dismissed to the extent it rests on Experian's conduct before receiving her letter. Although the court doubts that repleading could save that portion of the claim, the dismissal is without prejudice. *See Pension Trust Fund*, 895 F.3d at 941.

### 2. Experian's Conduct After Receiving Crump's Letter

A different result obtains as to Crump's § 1681i(a) claim and the portion of her § 1681e(b) claim pertaining to Experian's conduct after receiving her dispute letter. "A [CRA]

13

that has been notified of potentially inaccurate information in a consumer's credit report is in a very different position than one who has no such notice," because the former can "target its resources in a more efficient manner and conduct a more thorough investigation." *Henson*, 29 F.3d at 286. Once a CRA receives notice that information in a consumer report may be inaccurate, "the statutory duty [to reinvestigate under § 1681i(a)(1)] click[s] in, and at that point the continued sending of [the contested information] to creditors might be viewed as a failure to maintain reasonable procedures for assuring accuracy" under § 1681e(b). *Crabill v. Trans Union, L.L.C.*, 259 F.3d 662, 664 (7th Cir. 2001) (internal citations omitted).

Experian argues that Crump cannot plausibly allege that it acted unreasonably after receiving her dispute letter because it could not reasonably have been expected to resolve a legal dispute between Carrington and Crump concerning the scope of the bankruptcy court's discharge order. True enough, §§ 1681e(b) and 1681i(a)(1) do not require a CRA "to do more than a reasonable reinvestigation requires." *Wright*, 805 F.3d at 1245. And certain parts of Crump's complaint appear to allege that Experian informed Carrington of her dispute regarding the scope of the discharge order and that Carrington verified the debt. Doc. 1 at ¶ 85 ("Had Carrington reviewed the information provided by … Experian … , it would have corrected the inaccurate designation of the subject loan and transmitted the correct information to … Experian. Instead, Carrington wrongfully and erroneously verified its inaccurate reporting without conducting a reasonable investigation."). On those facts, Experian reasonably could have concluded that it could not further reinvestigate Carrington's information regarding Crump's mortgage debt without adjudicating a legal dispute about the scope and effect of the discharge order, a step that the FCRA likely does not require. *See Brill v. TransUnion LLC*, 838 F.3d 919, 921-22 (7th Cir. 2016) (holding that the FCRA did not obligate a CRA to resolve a creditor-debtor dispute

concerning the authenticity of a signature); *Wright*, 805 F.3d at 1245 ("[The plaintiff] insists the CRAs must … determine the validity of the tax lien. … [T]hat question is a matter he should take up with the IRS."); *Phillips v. Archstone Simi Valley LLC*, 740 F. App'x 603, 604 (9th Cir. 2018) ("[C]redit reporting agencies are not tribunals required to adjudicate disputes regarding the legal validity of a debt.") (internal quotation marks omitted); *Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d 876, 892 (9th Cir. 2010) ("[R]einvestigation claims are not the proper vehicle for collaterally attacking the legal validity of consumer debts.").

Elsewhere in her complaint, however, Crump alleges that Experian did *not* notify Carrington about her dispute letter, much less ask Carrington whether it contested her understanding of the amount (if any) owed on her mortgage loan. *Id*. at ¶ 156 ("Upon information and belief, Experian violated 15 U.S.C. § 1681i(a)(2) by failing to provide notification of Plaintiff's dispute to Carrington."). The Civil Rules permit this type of alternative pleading—here, the complaint's dueling allegations that Experian did and did not notify Carrington about Crump's dispute letter—and instruct that "the pleading is sufficient if any one of [the alternatives] is sufficient." Fed. R. Civ. P. 8(d)(2). In seeking dismissal, Experian neither acknowledges Crump's allegation that Experian failed to notify Carrington about her dispute letter nor argues that it would have been reasonable for Experian to disregard Crump's dispute letter without so much as asking Carrington about her contentions. Any such argument is therefore forfeited for purposes of this motion. *See Firestone*, 796 F.3d at 825; *G & S Holdings*, 697 F.3d at 538; *Alioto*, 651 F.3d at 721. It follows that Crump's §§ 1681e(b) and 1681i(a)(1) claims regarding Experian's conduct after receiving her dispute letter survive dismissal.

**Conclusion**

For the foregoing reasons, Experian's motion to dismiss is granted in part and denied in part. The motion is denied as to Crump's § 1681e(b) claim as it pertains to Experian's conduct after receiving her dispute letter and as to her § 1681i claim. Crump's § 1681e(b) claim as it pertains to Experian's conduct before receiving her dispute letter, as well as her § 1681c(f) claim, are dismissed without prejudice. Crump has until January 22, 2019 to file an amended complaint. If she does not do so, the dismissals will convert automatically to dismissals with prejudice. If Crump repleads, Experian will have until February 12, 2019 to file its response to the amended complaint.

January 7, 2019

                                                        United States District Judge